UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GILBERT RAMON,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>RON NEAL,<br><br>　　　　Defendant. | CAUSE NO. 3:25-CV-94-CCB-SJF |

**OPINION AND ORDER**

Gilbert Ramon, a prisoner without a lawyer, was granted leave to proceed on a claim against the Warden of Indiana State Prison ("ISP") for injunctive relief related to his need for mental health treatment under the Eighth Amendment. (ECF 14.) Ramon moves for a preliminary injunction requiring that he be given additional mental health treatment while this case is pending.[1] (ECF 12.) The court ordered a response from the Warden, which has now been filed. (ECF 22.) A reply was due by August 27, 2025, but none was received. N.D. Ind. L.R. 7-1(d)(2)(B).

BACKGROUND

In response to Ramon's motion for a preliminary injunction, the Warden submits medical records, an affidavit from the lead psychologist at ISP, and other

---

[1] The court dismissed other claims at screening, including Ramon's claim about a vast conspiracy by high-ranking state officials, prison staff, and others to assassinate him, which the court found in the vein of "fantastic." (*See* ECF 14.) Part of the motion for a preliminary injunction relates to the claims that were dismissed, but the court cannot grant Ramon relief related to those claims. *See Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012). This order focuses solely on his claim for the denial of mental health treatment.

documentation. (ECF 22.) Those records reflect that Ramon has been diagnosed with delusional disorder and receives psychiatric medication to manage this illness.[2] (ECF 22-2 ¶¶ 10, 12.) He sees a licensed mental health therapist for psychotherapy sessions roughly every 30 days. (*Id.* ¶ 11.) In recent months, he had psychotherapy sessions on the following dates: February 5, 2025; March 6, 2025; April 4, 2025; May 1, 2025; May 30, 2025; June 25, 2025; and July 25, 2025. (ECF 22-2.) At the July 25 visit, the therapist noted that his appearance, eye contact, cognition, perception, and thought content were all within normal limits. (*Id.* at 11.) He presented with a "stable mood" and discussed his frustration with disruptions to his daily schedule caused by correctional staff. (*Id.*) They talked through his issues, and the therapist provided him with self-help resources for conflict resolution and stress reduction. (*Id.*)

Ramon is also seen by a psychiatrist approximately every two months to manage his medications. (ECF 22-1 ¶ 12.) He was seen and evaluated by Dr. Aminata Cisse on March 19, 2025, and May 20, 2025. (*Id.* ¶ 14; ECF 22-2.) At the May 20 visit, the psychiatrist noted that he presented with "a decrease in mood lability and agitation." (ECF 22-2 at 27.) She adjusted his medications slightly due to the fact that he reported increased sleepiness. (*Id.*) He was scheduled to see Dr. Cisse again on July 17, 2025, but he refused the appointment. (ECF 22-1 ¶ 14). She continued his medications and directed staff to reschedule the appointment. (ECF 22-2 at 15-16; ECF 22-1 ¶ 15.)

---

[2] Medical records also reflect Ramon had a history of polysubstance abuse prior to his incarceration, including the use of LSD. (ECF 22-2 at 3, 27.)

2

In the view of ISP's lead psychologist, an individual with mental health problems will often display symptoms of their diagnosis even with therapy, medication, and other treatment. (*Id* ¶ 8.) The view of Ramon's providers is that although he displays some symptoms of his disorder even with medication and therapy, he is functioning adequately given his diagnosis. (*Id.* ¶ 16.) In their view, additional therapy and medication are not medically warranted at this time. (*Id.*) There is a mental health provider on call at all times at ISP. (*Id.* ¶ 6.) Should a mental health crisis arise with Ramon, medical staff at ISP can call the mental health provider for assistance. (*Id.*) If Ramon were to begin decompensating in terms of his functioning or ability to take care of himself, mental health staff at ISP could place him on a "mental health hold," and if necessary transfer him to a mental health unit at another prison. (*Id.* ¶ 7.)

## ANALYSIS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally

includes a demonstration of how the applicant proposes to prove the key elements of [his] case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove a violation of this right, a prisoner

must show (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, the inmate must demonstrate "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). In plain terms, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

The records before the court reflect that Ramon does indeed have a serious medical need. Those records also show that prison mental health staff are providing him with reasonable care for his condition. He receives psychiatric medication and is under the care of a psychiatrist. He also receives monthly psychotherapy visits with a therapist to help him process his issues and concerns. His providers are attuned to the possibility that Ramon could decompensate and have resources available should that occur. The professional opinion of those treating him is that he is functioning

5

adequately given his diagnosis, and that additional psychotherapy and medication are not medically warranted at this time. Their professional opinion is entitled to deference in this proceeding. *Walker*, 940 F.3d at 965. Ramon's own subjective assessment of his needs or disagreement with mental health providers does not establish an Eighth Amendment violation.[3] *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019).

In light of the present record, Ramon has not demonstrated a likelihood of success in proving that mental health staff are acting with deliberate indifference to his medical needs. Nor has he shown that he will be irreparably injured if he is not granted emergency relief while this case is pending. He is not entitled to the extraordinary remedy of a preliminary injunction.

For these reasons, the plaintiff's motion for a preliminary injunction (ECF 12) is **DENIED**.

SO ORDERED on September 15, 2025.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

---

[3] His request to be immediately released to home detention (ECF 12 at 17) is not a form of relief that is authorized in this civil rights case. *Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005).